# Richmond

ANNA A. WAGNSTROM v. GERALDINE R. POPE, AN INFANT.

January 16, 1967.

Record No. 6318.

Present, All the Justices.

*Peter G. Decker, Jr. (Decker and Porter, on brief), for the plaintiff in error.*

*Robert M. Furniss, Jr. (Furniss and Davis, on brief), for the defendant in error.*

I'ANSON, J., delivered the opinion of the court.

Anna A. Wagnstrom, plaintiff, instituted this action against Geraldine R. Pope, defendant, to recover damages for personal injuries sustained when she was struck by an automobile operated by the defendant. Defendant admitted liability and the case was submitted to a jury on the question of damages alone, which resulted in a verdict for the plaintiff in the amount of $7,000.

The trial judge, in a written opinion, set aside the jury's verdict on the ground that it was excessive. He said, among other things: "that there is no evidence of passion, corruption or prejudice on the part of the jury trying this case, nor could it be stated that a jury misunderstood the facts or law applicable. However, the amount is not only more than I would have allowed if sitting on the jury, but is in such disparity as to shock the conscience of the court and the entry of judgment on the verdict would constitute, in the Court's opinion, the plain perpetration of an injustice."

Plaintiff was put on terms to accept an award of $4,000 or suffer a new trial, and she accepted the reduced judgment under the provisions of Code § 8-350. She now asks this court to reverse the judgment of the trial court and reinstate the jury's verdict.

The evidence discloses that in the early afternoon of January 25, 1965, while plaintiff, aged 64, was loading groceries in her automobile on a parking lot in the city of Portsmouth, she was struck by an automobile operated by the defendant and knocked to the pavement. When the investigating officer arrived on the scene, plaintiff was still on the ground. He noticed that she was in "quite a bit of pain" and arranged to have her taken to a hospital.

Dr. Alex T. Mayo testified that plaintiff had suffered multiple skin abrasions on her left leg and both hands, and contusions and abrasions of her right leg. She had a large blood clot on the calf of her left leg and a definite hemorrhage under the skin of her left knee. There was also considerable tenderness in her right shoulder but there was no limitation of motion. X-rays did not reveal any fractures or dislocated bones. Plaintiff remained in the hospital until February 1, 1965.

Dr. Mayo next saw plaintiff on February 9, and at that time the blood clot, or hematoma, was still present in her leg and was soft and red. The next day he gave her a local anesthetic, and with a large needle he withdrew about a quarter of a pint of serum and blood from the area of the clot. After he aspirated the wound, he inserted a rubber drain and directed plaintiff to return for further examination and treatment. Thereafter she frequently visited the doctor's office

to have the wound cleaned, at which time it was opened with a clamp and drained.

On February 27 the doctor found some infection around the wound, and he enlarged the opening and inserted another drain. He put plaintiff on antibiotics and later made several visits to her home to give her penicillin injections and to dress the wound. On April 13, 1965, the injury had not healed and he again enlarged the incision and packed the wound with gauze impregnated with iodoform to assist in the healing process. She was discharged from the physician's care on May 7, 1965. On her last visit he found that although she would have permanent scars, there was no swelling or limitation of motion.

Dr. Mayo said that from the time of the accident until he reopened and repacked the wound plaintiff suffered "moderately severe pain" and she was relieved of pain only by taking narcotics.

Plaintiff testified, at the time of the trial on July 6, 1965, that she was still having difficulty with swelling in her leg and ankle and was very nervous. Dr. Mayo testified, however, that her complaints were not related to the injuries sustained on January 25.

Plaintiff's hospital, doctor and drug bills amounted to approximately $500.

■ The rules applicable for setting aside a jury verdict on the ground that it is excessive are well settled and were recently stated in *Edmiston* v. *Kupsenel*, 205 Va. 198, 202, 135 S. E. 2d 777, 780 (1964), and restated in *Hardy* v. *Greene*, 207 Va. 81, 84, 147 S. E. 2d 719, 721 (1966), and *Davenport* v. *Aldrich*, 207 Va. 271, 273, 274, 148 S. E. 2d 768, 770 (1966). They may be summarized as follows:

Where the jury verdict in a personal injury case appears to be the result of passion, prejudice or corruption, or misconception of facts or law, or where the disproportion between the plaintiff's injuries and the award is so great as to suggest that the decision was not fair and impartial, it is the duty of the trial court to set aside the verdict and grant a new trial as to damages or to put the successful party on terms to accept a reduced amount. But where the jury's verdict is supported by sufficient evidence and reached by a fair and impartial jury, it cannot be disturbed merely because the trial judge would have awarded damages in a lesser amount if he had been a member of the jury.

■ In the instant case the trial judge put the plaintiff on terms to accept a lesser sum on the grounds that the verdict was more than

he would have allowed if he had been sitting on the jury and that it was so out of proportion to the injuries sustained as to shock his conscience.

The trial court was of the opinion that the factual situation in the present case was similar to the one in *Smithey* v. *Sinclair Refining Co.*, 203 Va. 142, 122 S. E. 2d 872 (1961), and unlike *Edmiston* v. *Kupsenel, supra*. In *Smithey* we affirmed the action of the lower court in ordering a remittitur from $15,000 to $5,000 on the ground that "the plaintiff's injury was not of a serious nature nor was it permanent or disabling in any way." Smithey was never hospitalized except for emergency treatment, and his pain and suffering were slight. The expense incurred amounted to only $59.00. Although we concluded that the jury was not actuated by passion, prejudice or corruption, we said that the jury award could have resulted only from a misconception or misunderstanding of the seriousness of plaintiff's injuries.

In the present case, it is undisputed that plaintiff suffered painful injuries when she was struck by the defendant's automobile and knocked to the pavement on the parking lot. She was hospitalized for eight days, was in constant pain over a period of more than three months, and obtained relief only by taking narcotics. Defendant offered nothing to contradict the evidence of the plaintiff as to the extent and nature of her injuries or to minimize her pain and suffering. The scars on her leg were permanent.

The compensation one is entitled to receive for pain and suffering in a personal injury case cannot be measured with precision and ordinarily is a question of fact to be determined by the composite judgment of the jurors, fairly exercised, under no improper influence or circumstances. *Davenport* v. *Aldrich, supra*, 207 Va. at 273, 148 S. E. 2d at 770. There is no contention here that the amount awarded the plaintiff was influenced by prejudice or misconception of the facts or the law.

Thus we conclude that the fair compensation to be awarded plaintiff for the pain and suffering she endured and for the permanent scars was for the jury to determine, and that the amount is not so out of proportion to the injuries sustained as to shock the conscience.

For the reasons stated, the judgment of the trial court is set aside, the verdict of the jury is reinstated and judgment is here entered thereon.

*Reversed and final judgment.*