# Richmond

## CLARA HARDY v. MAGGIE CATHERINE GREENE.

April 25, 1966.

Record No. 6164.

Present, Eggleston, C. J., and Buchanan, Snead, l'Anson, Carrico and Gordon, JJ.

*J. Westwood Smithers* (*Wells, Smithers & Bradshaw*, on brief), for the plaintiff in error.

*Nathan H. Smith* (*A. Scott Anderson; Sands, Anderson, Marks & Clarke*, on brief), for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

Clara Hardy, plaintiff, brought this action for damages against Maggie Catherine Greene, defendant, for personal injuries resulting from on automobile collision. A jury returned a verdict in her favor for $8,500, which the trial court set aside on the ground that it was "excessive and shocks the conscience of the Court." The court then put the plaintiff "on terms" to accept $4,000 and entered judgment for her in that amount, from which she has appealed.

Plaintiff's injuries occurred when the automobile in which she was a passenger, and which was being driven by her husband, was struck from behind by an automobile driven by the defendant. At the trial plaintiff introduced her evidence to prove the nature of her injuries and that they were caused by the negligence of the defendant. At the conclusion of the evidence offered by the defendant in denial of her negligence, the court struck it out as not being sufficient to support that defense, and the case was submitted to the jury only on the question of damages.

Defendant offered no evidence on the question of the plaintiff's injuries and states in her brief that there was no issue as to liability, and that the case went to the jury on the sole issue of "how much."

Plaintiff's husband testified that the impact from the collision "was terrific" and that both seats of his two-door car were broken all the way back. He said that at the time of the trial, some ten months after the accident, plaintiff was still very nervous, which she never had been before, and that she complained constantly of her neck and her hand.

Plaintiff testified that she was jerked nearly into the back seat. She visited her doctor later that day and was suffering from headache and pain in her neck, which was worse the next day. At the time of the trial, May 9, 1963, she testified that she was unable to do the things she did before the accident, which happened on June 25, 1962, because her shoulder bothered her and she was unable to do heavy work; that she still had a slight hurting in her arm and her finger caused her trouble. For a while she had swelling in this finger, and it had a withered look. She said it had now improved "quite a bit" but still had a slight tingling sensation affecting the grip of her hand, which tired very easily.

Plaintiff was thirty-eight years old at the time of the trial and had been employed by a telephone company for eleven years as a repair clerk, accepting repair calls and filing card records.

The doctor who treated the plaintiff for her injuries testified that when he saw her on the day of the accident she complained of an ache at the base of her skull and soreness in her neck and shoulder. He said there was limitation of motion of her head and movement of it caused pain in her shoulder and neck. He saw her again next day and the muscle soreness had increased and she complained of not being able to sleep. Physical therapy was then begun in the form of an ultrasonic treatment and had continued on a biweekly basis. The pain persisted and became more extreme in the right arm, with a numbness in her right fifth finger. Muscle spasm occurred and there was extreme tenderness to pressure in the shoulder area on both sides of the spine. X-rays revealed a curvature of the spine, which was present before the accident, and the doctor thought there was aggravation of this pre-existing condition.

The condition of the finger indicated to the doctor that there had been at least a partial severance of nerve function in the finger. In addition to physical therapy plaintiff was given medicines by mouth and by injection in an effort to obtain relief. At the time of the trial there had been some improvement in her shoulders and neck, and slight improvement in the finger, but its full function had not returned. She had then made fifty-two visits to the doctor, whose charge to that date was $297. He instructed her to refrain from any lifting and from any ironing or sweeping.

The doctor's prognosis was that in a period of three to six months there would be a return of function sufficient to allow plaintiff to perform her normal duties, but beyond this, probably as long as a year, she would have some numbness. He said: "She will have some pain in the finger with cold. But I feel that this will be something that she will learn to live with very well and will not stop her function, and thereby not be a permanent disability as far as being something that she will lose function from." He thought that in a period of twenty to twenty-four months she would achieve her pre-accident physical condition as far as the numbness was concerned. It was expected that treatment would have to be continued on a biweekly basis for an additional eighteen to twenty weeks. He testified that the plaintiff had been cooperative and her complaints had been confirmed by objective findings all the way through.

In addition to the doctor's bill of $297 incurred at the time of the trial, plaintiff had incurred expenses of $45 for x-ray treatments, $55.85 for medicine, and loss of wages of $128.70, a total of $526.55, added to which will be amounts to be paid for future treatments.

■ The rules applicable to setting aside a jury's verdict on the ground that it is excessive are well settled and were recently stated by Mr. Justice Carrico in *Edmiston* v. *Kupsenel*, 205 Va. 198, 202, 135 S.E.2d 777, 780, as follows:

"Where the attack upon such a verdict is based upon its alleged excessiveness, if the amount awarded is so great as to shock the conscience of the court and to create the impression that the jury has been motivated by passion, corruption or prejudice, or has misconceived or misconstrued the facts or the law, or if the award is so out of proportion to the injuries suffered as to suggest that it is not the product of a fair and impartial decision, the court is empowered, and in fact obligated, to step in and correct the injustice. * *

"If the verdict is determined to be excessive, the court may put the successful party on terms to accept a reduced amount, deemed reasonable compensation for his injuries, as an alternative to awarding a new trial (Code, § 8-350), or it may order a new trial as to the whole amount of damages (Code, § 8-224)."*

But as further said in *Edmiston*, if the verdict is supported by sufficient evidence and is reached in a fair and impartial trial, it cannot be disturbed merely on the ground that it is more than the trial judge would have awarded if he had been a member of the jury.

■ The defendant says in her brief that she does not contend that the verdict of the jury was actuated by passion, prejudice or corruption, but that an award of $8,500 could have come only from a misconception or misunderstanding of the nature of plaintiff's injuries.

There is nothing in the record to indicate that the jury labored under any misconception or misunderstanding about plaintiff's injuries. They were plainly stated by her and her husband and explained at length by her doctor. There is nothing to show that they were magnified in any fashion, or that anything was said or done in the trial to mislead the jury as to their cause or nature or effect. Defendant offered nothing to contradict the evidence for the plaintiff as to her injuries or to minimize their nature or extent.

The amount of fair compensation for the plaintiff's injuries did

---

* By the order appealed from in the present case the trial court held that the verdict should be set aside and plaintiff was put on terms to accept $4,000, whereupon the court, without reference to a jury, entered judgment for the plaintiff in that amount. The court should have put the plaintiff on terms to accept the reduction, or submit to a new trial as to damages, as stated in *Edmiston* and also in *Isenhour* v. *McGranighan*, 178 Va. 365, 372-3, 17 S.E.2d 383, 386. However, the plaintiff made no complaint as to the procedure and in view of the disposition to be made of the case it is not here material.

not become a question of law for the court, as the defendant argues, when the evidence for the plaintiff was not contradicted by any evidence offered by the defendant. It remained a question of fact to be determined by the composite judgment of the jurors, fairly exercised under no improper influence or circumstances. The pain and suffering of the plaintiff were real. She had not been relieved of it at the time of the trial; there had to be additional trips to the doctor's office and additional expense, and when treatments were over she would have pain in the damaged finger which she would have to learn to live with.

We conclude that under the facts shown by the evidence the fair price to be paid for the injuries caused by the defendant was for the jury to determine, and that the amount determined by the jury was not so excessive as to shock the conscience and to warrant the reduction of the verdict to a sum considered sufficient by the court. *Williams Paving Co.* v. *Kreidl,* 200 Va. 196, 204, 104 S. E. 2d 758, 764.

The judgment is therefore reversed, the verdict of the jury for $8,500 is reinstated, and final judgment will be entered thereon in favor of the plaintiff.

*Reversed and final judgment.*